**Lois B. MORRIS, Plaintiff–Appellant,**

v.

**BUSINESS CONCEPTS, INC., James J. Maher and Petra H. Maher, Defendants–Appellees.**

**Docket No. 00–7509.**

United States Court of Appeals, Second Circuit.

March 18, 2002.

David B. Wolf, New York, N.Y. (Cowan, DeBaets, Abrahams & Sheppard, LLP, of counsel), for Plaintiff–Appellant.

Jeffrey A. Oppenheim, New York, N.Y. (Law Office of Jeffrey A. Oppenheim, of counsel), for Defendants–Appellees.

Before OAKES, KEARSE and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge.

In response to the petition for rehearing, we write to clarify part of the reasoning in our opinion. Because it might significantly affect some future case, we wish to modify our opinion by removing Part I.

In saying that "an owner of a particular right—as opposed to the copyright itself—would not be a copyright owner," *Morris v. Business Concepts, Inc.,* 259 F.3d 65, 69 (2d Cir.2001), we relied upon the great copyright treatise, 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.02[C][2], at 10–28 (2000):

[T]here is never more than a single copyright in a work, notwithstanding the author's exclusive license of certain rights.

While Nimmer is supported by at least one other treatise, *Boorstyn on Copyright,*[1] others are not so clear or perhaps are even contrary.[2]

We recognize that the language of Section 101 itself, and of the Supreme Court in the recent case *New York Times Co., Inc. v. Tasini,* 533 U.S. 483, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001), casts serious doubt upon the question whether there may be only "a single copyright in a work." The statute, as pointed out in footnote 2, *supra,* states that a " '[c]opyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right."[3] 17 U.S.C. § 101 (2001). And the Supreme Court, as part of its approach to the collective work problem, said that "The 1976 Act rejected the doctrine of indivisibility, recasting the copyright as a bundle of discrete 'exclusive rights,' 17 U.S.C. § 106 (1994 ed. and Supp. V), each of which 'may be transferred ... and owned separately.' § 201(d)(2)." *Tasini,* 121 S.Ct. at 2388–89 (footnote omitted).

But even if we could resolve the thorny problem of whether a single copyright exists, we would still have to answer the question whether (assuming that both the

---

**1.** "Despite the new concept of divisibility of copyright ownership, a distinction must be made between ownership of copyright in the work itself and ownership of the separate rights of copyright. There is only one copyright in a work and it is not divisible; there are, however, different rights of copyright and they are divisible." Neil Boorstyn, *Boorstyn on Copyright,* § 3.08, at 3–33 to 34 (2000). *See also* Paul Goldstein, *Copyright,* § 4.4.1.1 at 409 ("Although the Copyright Act makes copyright divisible into individual exclusive rights and gives the holders of these rights the same protection that it gives to copyright owners generally, the Act also presupposes that there will at any time be only one copyright and one copyright owner.")

**2.** *See* 1 Howard B. Abrams, *The Law of Copyright* § 4.05[A], 4–70 (2000) ("Section 201(d)(2) expressly makes the exclusive rights in a copyright divisible and capable of separate ownership, thus laying to rest the clumsy and antiquated doctrine of indivisibility that had plagued the 1909 Act.") & n. 186 ("Prior to its unmourned demise, the doctrine met with constant criticism from the commentators ... and was often evaded or limited by the courts. *See, e.g., Goodis v. United Artists Television, Inc.,* 425 F.2d 397 (2d Cir.1970).") *See also* 1 William F. Patry, *Copyright Law and Practice,* 359–60 (1994):

The 1976 Act does not provide a definition of "copyright"; instead, the exclusive rights granted in Sections 106 and 106A together comprise the copyright. Initially, these rights vest, as a bundle, in the author. The author's Section 106 rights may be transferred in a number of ways, including by assignment, operation of law, bequest, and intestate succession. Each right or portion of a right may be transferred separately. As long as the right transferred is exclusive, the transferee is considered the "copyright owner" of that right and may enforce it separately without the consent of the owner(s) of the other rights. This principle, known as "divisibility," is established by the Act's definition of "copyright owner": "Copyright owner," with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

(Footnotes omitted).

**3.** We note that Nimmer, in § 10.02[C][2] n. 58 at 10–30 to 31, relies upon counsel for the Authors League of America to point out the statutory contrast between § 101, which refers to a transfer of particular rights, and § 201(d)(1), which refers to a transfer of "[t]he ownership of copyright." He furthers notes that provisions § 201(e), 202, and 203(a) all distinguish between the "ownership of copyright" and ownership of "any of the exclusive rights under a copyright." Nimmer then states: "Yet, 'copyright owner' under the § 101 definition may only be equated with the owner of any of the exclusive rights under a copyright."

author and the exclusive licensee are copyright owners) a registration by one can, for purposes of § 411(a), cover the rights of the other. The statute itself does not answer this question since it requires only that registration be made "in accordance with this title," which includes other sections of the title such as §§ 408 and 409, as well as the Copyright Office's registration practices and regulations.

Morris contends that the holding in *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir.1998), that the registration of a derivative work meets the jurisdictional requirements of § 411(a) in a suit for infringement of the original work where the claimant owns the copyright in both, requires us to find that if Condé Nast was a "copyright owner" of Morris's articles at the time it registered the issues of *Allure* in which they appeared, then those articles are registered for the purposes of § 411(a). *See Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y.1996), *cited in Streetwise Maps*, 159 F.3d at 747. We disagree. In *Streetwise Maps*, the plaintiff apparently owned *all* of the rights to the original work at the time it registered the copyright. *See* 159 F.3d at 746–47. In this case, it is undisputed that Condé Nast owned only some of the rights to Morris's articles at the time it registered the relevant issues of *Allure*.

 The distinction between those constituent parts of a collective work in which the author of the collective work owns all rights and those constituent parts in which the author does not own all rights is critical in determining whether a copyright registration in a collective work also registers a copyright claim in a particular constituent work. As explained in the *Circular for Copyright Registration on Form SE*, which concerns the form used by Condé Nast to register the issues of *Allure* as serial publications:

The claimant registering a serial may claim copyright not only in the collective-work authorship for which the claimant is responsible but also in any independently authored contributions in which all rights have been transferred to the claimant by the contributors.

If the serial issue includes any independently authored contributions in which all the rights have *not* been transferred by the contributor to the claimant for the serial issue as a whole, those contributions are not included in the claim being registered, because the claimant in these contributions is different from the claimant in the entire serial issue.

Copyright Office Circular No. 62 (Serials) (emphasis in original). This language highlights that if all rights in a constituent work have not been transferred to the claimant, a collective work registration will not apply to the constituent work. If, on the other hand, all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work.

 We recognize that "the Copyright Office has no authority to give opinions or define legal terms, and [that] its interpretation on an issue never before decided should not be given controlling weight," *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946–47 (2d Cir.1975) (footnotes omitted). In this case, however, we find the Office's interpretation persuasive. *Cf. United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2175, 150 L.Ed.2d 292 (2001) (noting that even where an agency's interpretation of law is not entitled to highly deferential treatment pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader inves-

tigations and information' available to the agency" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944))). Accordingly, we hold that unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part.

Although *Tasini* contains much language favorable to the authors of an article included by a publisher in a collective work, *see* 121 S.Ct. at 2388–89, it is not to the contrary. In *Tasini*, "The Authors registered copyrights in each of the Articles. The ... Print Publishers ... registered collective work copyrights in each periodical edition in which an Article originally appeared." *Id.* at 2385. In our case, Morris did not register her copyright, though she could, of course, have done so. The Copyright Office regulations permit:

as a general rule, only one registration per work. Under these regulations an exclusive transferee of a single § 106 right, who qualifies as a "copyright owner" under the § 101 definition, will not be permitted to register a claim in that single right. Based on both practical and legal considerations, these regulations are designed "to make[ ] clear that the copyright 'claimant' for purposes of copyright registration is the author of the work for which registration is sought or a person or organization that has obtained ownership of *all rights* under the copyright initially belonging to the author." Interim Regulation: Part 202– Registration of Claims to Copyright, 43 Fed. Reg. 965 (1978).

1 Patry at 360 n. 6.

█ We therefore conclude that regardless whether Conde Nast was a copyright owner of Morris's articles, its registration of the collective works in which they appeared do not satisfy § 411(a)'s requirements with respect to Morris.

We have considered Morris's arguments with respect to Parts II and III of our opinion, and find them to be unconvincing. We therefore deny the petition for rehearing.