354 F.3d 112
 WELL-MADE TOY MFG. CORP., a corporation of the State of New York, Plaintiff-Counter-Defendant-Appellant,
v.
GOFFA INTERNATIONAL CORP., a corporation of the State of New York, King Kullen Grocery Co., Inc., Defendants-Counter-Claimants-Appellees.
 Docket No. 02-7881.
 United States Court of Appeals, Second Circuit.
 Argued: May 30, 2003.
 Decided: December 2, 2003.
 
 Gerard F. Dunne, Law Office of Gerard F. Dunne, Esq., New York, NY, for Plaintiff-Counter-Defendant-Appellant.
 William A. Alper, Cohen, Pontani, Lieberman & Pavane (Martin B. Pavane and Catriona M. Collins, of counsel), New York, NY, for Defendants-Counter-Claimants-Appellees.
 Before: CALABRESI and SACK, Circuit Judges, and GARAUFIS, District Judge.*
 SACK, Circuit Judge.
 
 
 1
 This is an appeal from a judgment on a copyright infringement claim rendered by the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) in favor of the defendants-counter-claimants-appellees Goffa International Corporation ("Goffa") and King Kullen Grocery Co., Inc., ("King Kullen"). The plaintiff-appellant Well-Made Toy Mfg. Corp. ("Well-Made") asserts that a rag doll manufactured by Goffa and sold at retail by King Kullen infringed the copyright for two rag dolls designed and manufactured by Well-Made. Well-Made's dolls seem similar to one another, although they are of significantly different sizes. Well-Made's larger 48-inch doll was a derivative work based upon its smaller 20-inch doll. Well-Made had registered its copyright in the 20-inch doll but not in the larger, derivative one.
 
 
 2
 Following a bench trial, the district court decided that Goffa's rag doll was not substantially similar to Well-Made's registered, 20-inch doll. The district court also concluded that because the copyright in the later, 48-inch doll had not been registered, the court lacked subject matter jurisdiction to consider whether the copyright in that doll had been infringed by Goffa's doll. See 17 U.S.C. § 411(a) (prohibiting an "action for infringement of the copyright in any ... work ... until registration of the copyright claim has been made in accordance with this title.").
 
 
 3
 On appeal, Well-Made does not contest the district court's finding that Goffa's doll is not substantially similar to Well-Made's 20-inch doll. Well-Made argues instead that registration of the copyright claim in the 20-inch doll creates subject matter jurisdiction over infringement claims with respect to its 48-inch derivative of the 20-inch doll, which Well-Made claims is infringed by Goffa's doll. Well-Made also argues that its right to control the production of works derivative of the 20-inch Well-Made doll was infringed. Well-Made contends that if Goffa's doll is derivative of Well-Made's 48-inch doll, and if the 48-inch doll is itself derivative of the 20-inch doll, then the derivative's derivative — the Goffa doll — is transitively derivative of the 20-inch doll, irrespective of any substantial similarity, or lack thereof, between Well-Made's 20-inch doll and Goffa's 48-inch doll. For the reasons that follow, we reject both of Well-Made's arguments and affirm the judgment of the district court.
 
 BACKGROUND
 
 4
 The facts underlying this appeal are set forth in comprehensive detail in the opinion of the district court. Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F.Supp.2d 147 (E.D.N.Y.2002). We discuss them here only to the extent necessary to explain our resolution of this appeal.
 
 
 5
 Well-Made manufactures and sells rag dolls with the name "Sweetie Mine." The first Sweetie Mine was a 20-inch doll, the copyright for which Well-Made registered in 1996. Two years later, Well-Made designed a 48-inch version. The 48-inch Sweetie Mine was created by enlarging the cloth patterns for the 20-inch Sweetie Mine on a photocopier, then adjusting the enlarged doll's proportions. Well-Made considered the adjustments, made according to the artistic judgment of Well-Made's designers, necessary to achieve aesthetic proportionality in the larger doll's features. Well-Made never registered a copyright in the 48-inch Sweetie Mine.
 
 
 6
 Also in 1998, Goffa began manufacturing a 48-inch rag doll called the "Huggable Lovable." The Huggable Lovable was sold through King Kullen stores. King Kullen is represented jointly with Goffa under an indemnification agreement between them.[1]
 
 
 7
 In 1999, Well-Made brought suit against Goffa and King Kullen in the United States District Court for the Eastern District of New York, alleging that the Huggable Lovable infringed Well-Made's copyrights in the 20- and 48-inch Sweetie Mines. At the conclusion of a bench trial, the district court found that Goffa had designed the Huggable Lovable by "actually cop[ying] large parts of" the 48-inch Sweetie Mine. Id. at 167. According to the court, however, the Huggable Lovable did not infringe Well-Made's copyright in the 20-inch Sweetie Mine, because of the difference between the sizes, proportions, facial features, fabrics, and colors of the two dolls. Id. at 167-72. The court also concluded that it lacked subject matter jurisdiction to consider whether Goffa's Huggable Lovable infringed Well-Made's copyright in the 48-inch Sweetie Mine, because there was no separate registration of any such copyright claim. Id. at 164-65, 172 (citing 17 U.S.C. § 411(a)).
 
 
 8
 On appeal, Well-Made argues that the district court was mistaken in not considering infringement of the 48-inch Sweetie Mine because, although there is no registered copyright for that doll, it is a derivative work based on the 20-inch Sweetie Mine, which is registered. Well-Made also contends that if the Huggable Lovable is derivative of the 48-inch Sweetie Mine, and the 48-inch Sweetie Mine is derivative of the 20-inch Sweetie Mine, then the Huggable Lovable violates Well-Made's exclusive right to prepare derivative works of its registered 20-inch doll under 17 U.S.C. § 106(2).
 
 DISCUSSION
 I. Standard of Review
 
 9
 On appeal from a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd., 190 F.3d 64, 67 (2d Cir.1999). Mixed questions of law and fact are also reviewed de novo. White v. White Rose Food, 237 F.3d 174, 178 (2d Cir.2001).
 
 II. Registration of an Underlying Work
 
 10
 Under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." This registration requirement is jurisdictional. See Morris v. Business Concepts, Inc., 283 F.3d 502, 505 (2d Cir.2002); see also 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][1][a], at 7-155 (2002).
 
 
 11
 Well-Made never filed a separate copyright claim registration for the 48-inch Sweetie Mine, but contends that the district court should nonetheless have considered infringement of a copyright on the 48-inch Sweetie Mine. According to Well-Made, its registration of a copyright claim with respect to the 20-inch Sweetie Mine suffices. We disagree. Under section 411(a), registration of a claim on an original work does not create subject matter jurisdiction with respect to a suit for infringement of the original's unregistered derivative.
 
 
 12
 We addressed the mirror image of this issue in Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739 (2d Cir.1998). There, the plaintiff had published two Manhattan street maps, the later-published map differing from the earlier by the addition of subway and bus lines. No copyright claim had been registered for the earlier map. The later map had been registered, with the certificate of registration indicating that it was derivative of the earlier map and listing the subway and bus lines as the newly added expressive elements. The defendants argued that the district court lacked subject matter jurisdiction to hear claims alleging that any aspects of the maps other than the drawings of the subway and bus lines had been copied. We disagreed, holding that "because [the plaintiff] is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work." Id. at 747; cf. Morris v. Business Concepts, Inc., 259 F.3d 65, 68 (stating that under Streetwise Maps, "where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part."), modified on reh'g, 283 F.3d 502 (2d Cir. 2002).
 
 
 13
 Well-Made contends that the converse proposition — that registration of a claim on a pre-existing work confers jurisdiction over infringement claims regarding its derivative works — is also true. We conclude otherwise.
 
 
 14
 Neither Streetwise Maps nor its logic governs Well-Made's claim. In Streetwise Maps, the registration statement listed the pre-existing work, the plaintiff was the copyright owner of both works, and the pre-existing work was wholly subsumed within the registered derivative work. By contrast, the copied work here is not listed in any copyright registration and the only copied expressive elements (the 48-inch Sweetie Mine's fabric pieces) do not appear in any work whose copyright has been registered. See Murray Hill Publ'ns v. ABC Communications, Inc., 264 F.3d 622, 632 (6th Cir.2001) ("Because a derivative work is cumulative of the earlier work, it is logical that the registration of the derivative work would relate back to include the original work, while registration of the original material would not carry forward to new, derivative material."); accord Creations Unlimited, Inc. v. McCain, 112 F.3d 814, 816 (5th Cir.1997) (per curiam). We cannot conclude that the district court had jurisdiction over this claim in light of section 411(a)'s command that "no action for the infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made." Because Well-Made did not register its copyright in the 48-inch Sweetie Mine, section 411(a) barred the district court from considering whether that copyright had been infringed by Goffa.
 
 
 15
 III. Unauthorized Production of a Derivative Work
 
 
 16
 The Copyright Act of 1976 protects a copyright owner's exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). A "derivative work" is defined as
 
 
 17
 a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".
 
 
 18
 17 U.S.C. § 101. The district court decided that Goffa designed the Huggable Lovable by working from the 48-inch Sweetie Mine, Well-Made, 210 F.Supp.2d at 167. Well-Made argues that the Huggable Lovable is a derivative work based on the 48-inch Sweetie Mine and that, because the 48-inch Sweetie Mine is, in turn, a derivative work based on the 20-inch Sweetie Mine, id. at 164-65, the Huggable Lovable is a derivative work of the 20-inch Sweetie Mine and therefore infringed Well-Made's right to prepare derivative works based on its 20-inch doll.
 
 
 19
 But even if Goffa's Huggable Lovable is derivative of Well-Made's 48-inch Sweetie Mine, it does not follow that Goffa violated Well-Made's right to control the preparation of works derived from the 20-inch Sweetie Mine. In Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc., 150 F.3d 132 (2d Cir.1998), we considered a claim that the copyright in the television program Seinfeld had been infringed by the publication of The Seinfeld Aptitude Test, a book containing trivia questions about the program. The plaintiff alleged violations of its rights of reproduction and its right to control the production of derivative works under 17 U.S.C. §§ 106(1) & (2). We drew no distinction between the two forms of infringement and addressed both by asking whether the book was substantially similar to the television program. See id. at 137-41. We explained that even when one work is "based upon" another,
 
 
 20
 if the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work.
 
 
 21
 Id. at 143 n. 9 (emphasis added) (citing 1 Nimmer on Copyright § 3.01, at 3-3 ("[A] work will be considered a derivative work only if it would be considered an infringing work.")).
 
 
 22
 In the case before us, the district court found that after disregarding those aspects of the dolls that, common to all rag dolls, are in the public domain and unprotected, the 20-inch Sweetie Mine and the Huggable Lovable have little in common. The face, palette, dress, style, and overall impression of the two Sweetie Mine dolls, which are similar to each other, are not similar to those of the Huggable Lovable. The Huggable Lovable is similar to the 48-inch Sweetie Mine, but the protectable similarity begins and ends with the dolls' shapes, shapes that the 48-inch Sweetie Mine does not share with the 20-inch Sweetie Mine because of the changes made in the 48-inch doll's proportions for aesthetic reasons. Well-Made, 210 F.Supp.2d at 166-72. Well-Made does not challenge this finding on appeal. Because the allegedly derivative work — the Huggable Lovable — sufficiently transformed the expression of the original work — the 20-inch Sweetie Mine — such that the two works ceased to be substantially similar, "the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work," Castle Rock, 150 F.3d at 143 n. 9, irrespective of whether the Huggable Lovable is substantially similar to or derived from the 48-inch Sweetie Mine.
 
 CONCLUSION
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Although the district court said that "Well-Made has indemnified King Kullen,"Well-Made Toy, 210 F.Supp.2d at 153, it was Goffa who indemnified King Kullen. Because we conclude that the copyright claim in issue is not viable, the claims against King Kullen fail along with those against Goffa. No separate discussion of the claim against King Kullen is required.