**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALASKA STOCK, LLC,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>HOUGHTON MIFFLIN HARCOURT<br>PUBLISHING COMPANY; R.R.<br>DONNELLEY & SONS COMPANY,<br>*Defendants-Appellees*. | No. 10-36010<br><br>D.C. No.<br>3:09-cv-00061-HRH<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, Senior District Judge, Presiding

Argued and Submitted July 27, 2011
Submission Withdrawn June 7, 2012
Resubmitted January 10, 2014
Anchorage, Alaska

Filed March 18, 2014

Before: Diarmuid F. O'Scannlain,[*] Andrew J. Kleinfeld,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Kleinfeld

---

[*] Judge Betty B. Fletcher was a member of the panel but passed away after oral argument. Judge O'Scannlain was drawn to replace her. He has read the briefs, reviewed the record, and listened to the tape of oral argument held on July 27, 2011.

## SUMMARY[**]

### Copyright

Reversing the district court's dismissal of a copyright infringement action, the panel held that copyright registration of a collective work registers the component works within it.

The panel held that the Register of Copyrights had authority to prescribe a form and grant certificates extending registration to individual stock photographs within a collection where the names of each of the photographers, and titles for each of the photographs, were not provided on the registration applications. Agreeing with other Circuits, and deferring to the Copyright Office's interpretation of the Copyright Act, the panel held that where the photographers had assigned their ownership of their copyrights in their images to the stock agency, and the stock agency had registered the collection, both the collection as a whole and the individual images were registered.

### COUNSEL

Maurice Harmon (argued), Harmon & Seidman LLC, Northampton, Pennsylvania; Christopher Seidman, Autumn W. Boyd, and Craig F. Wallace, Harmon & Seidman LLC, Grand Junction, Colorado; Brent R. Cole, Marston & Cole PC, Anchorage, Alaska, for Plaintiff-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

J. Russell Jackson (argued), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York; Daniel C. Kent, Birch, Horton, Bittner, and Cherot, Anchorage, Alaska, for Defendants-Appellees.

Tony West, Assistant Attorney General; Scott McIntosh and Melissa N. Patterson (argued), Attorneys, Appellate Staff, Department of Justice, Civil Division, Washington, D.C.; David Carson, General Counsel; Robert Kasunic, Deputy General Counsel, United States Copyright Office, Washington, D.C., for Amicus Curiae United States of America.

## OPINION

KLEINFELD, Senior Circuit Judge:

We address whether copyright registration of a collective work registered the component works within it.

### Facts

This case was dismissed for failure to state a claim, so we assume for purposes of analysis that the facts were as pleaded in the complaint.

Alaska Stock, a stock photography agency, registered large numbers of photographs at a time, listing only some of the authors and not listing titles for each photograph. It licensed Houghton Mifflin Harcourt Publishing Company to use pictures it had registered, for fees based on the number of publications. Houghton Mifflin and its printer, R.R. Donnelly & Sons, greatly exceeded the number of publications

Houghton Mifflin had paid for, so Alaska Stock sued for injunctive relief, actual and statutory damages, attorneys' fees, and costs.

Alaska Stock owned the copyrights to all the photographs at issue, pursuant to assignment by the individual photographers. It registered the copyrights by registering CD catalogs and databases of the stock photos, entitled "Alaska Stock CD catalog 4" and so forth, which contained images of each of the photographs. For "name of author" on its application, it listed only three of many, in the form "1) Jeff Schultz 2) Chris Arend 3) Johnny Johnson & 103 others."

This form of registration was prescribed by the Register of Copyrights and was consistent with Copyright Office procedure for thirty years. The district court nevertheless dismissed the claims on the ground that the registrations were defective, because Alaska Stock had not provided the names of each of the photographers and the titles of each of the photographs in its registrations. The theory of the dismissal was that the registrations succeeded only in registering the catalogs themselves, not the individual photographs within them, on account of Alaska Stock's failure to list authors and titles. The district court held that the statute unambiguously required titles and authors, so the administrative practice to the contrary and a statutory savings clause for immaterially inaccurate information could not save the claims.

We reverse.

We first expand somewhat on the history that led to the registrations in the form used, and then explain why the registrations sufficed under the statute.

Professional photographers make their living in various ways, sometimes shooting pictures for weddings, sometimes for advertisements, sometimes "stock."  In "stock photography," the photographer usually makes the images before he has a customer.  He then contracts with a stock agency for the agency to handle copyright registration and licensing, often for a cash payment up front to the stock agency and a percentage of whatever the stock agency collects.  Purchasers buy permission from the stock agency to use particular pictures, usually for a limited number of copies, with the prices varying from less than a dollar to perhaps a couple of hundred dollars.  The photographer's income depends on getting noticed and on volume, since the pictures are licensed so inexpensively.  Stock agencies relieve the photographers of some of the burden of managing the commercial end of their business, so that they can focus more on making images, and they relieve publishers of the burden of locating photographers and purchasing rights to use the images they want.

A particularly important task the stock agencies may perform is at issue here:  registering copyrights, to deter pirating.  That is what Alaska Stock did for the many photographers whose images are affected by this case.  Alaska Stock registered thirteen automated databases[1] and one "CD-ROM collection" of photographs.  Alaska Stock's photographs are each independently copyrighted, so the databases and CD-ROM at issue are each a "collective work" under the Copyright Act.  The several databases contained between 500 and 6,000 individual photographs each.  Each database or CD-ROM contained the work of between 32 and 106 photographers.

---

[1] 37 C.F.R. § 202.3(b)(4) (2006) *recodified at* § 202.3(b)(5).

The copyright laws and procedures are complex, so photo stock agencies worked out the registration procedure with the federal agency in charge. Some stock agencies (such as the plaintiff in this case) are very small businesses reliant on a trade association to work out the procedures they should follow. In 1995, a trade association of stock agencies, Picture Agency Council of America, Inc., met with the Register of Copyright (the head of the Copyright Office), her Chief Examiner, and other Copyright Office staff, to work out how to register large catalogs of images. The Register agreed that a stock agency could register both a catalog of images and the individual photographs in the catalog in one application if the photographers temporarily transferred their copyrights to the stock agency for the purposes of registration.

The trade association confirmed this with the Copyright Office in writing, and advised its member stock agencies. Using language suggested by the Copyright Office, Alaska Stock's typical pre-2001 agreement with a photographer includes this language: "I grant Alaska Stock the right to register for copyright my photographs which appear in this catalog in the name of Alaska Stock *solely* for the purpose of catalog registration. Alaska Stock shall reassign such copyright to me upon request." The post-2001 language was materially similar: "Photographer grants to Alaska Stock, *solely* for the purpose of registration, the copyright . . . ."

The Copyright Office provided a letter to the trade association telling it how stock photo catalogs ought to be registered. The letter says that listing only three individual photographers by name, followed by the phrase "and x [number] others," and naming the agency as owner of the copyrights was "acceptable when the accompanying deposit copies are catalogs consisting of photographs." A copyright

examiner would interpret such filings to mean that the claim being registered would include the catalog and "extend also to the photographs themselves." The letter says that a "registration application submitted for a work created by a large number of authors is considered acceptable 'if it names at least three of those authors followed by a statement such as "and (number) others.""" Though the office had a "preference" for naming all the authors, the Copyright Office letter says that it is "just that—a preference but not a requirement."

Having the written blessing of the federal administrative agency for its method, Alaska Stock filed its applications in accord with what the Copyright Office had said was required. The registration quoted above is its standard form, and was adequate under the Copyright Office procedures in effect at the time to register the individual images. The deposits filed with the registration applications show innumerable beautiful images of mountains, glaciers, polar bears, grizzly bears, bald eagles, dog mushing, and other subjects evoking the North. The Copyright Office approved Alaska Stock's applications and issued certificates of registration to the company.

Alaska Stock's contracts with photographers require the photographers to pay Alaska Stock substantial amounts per image, and entitle them to 35% to 50% of revenues Alaska Stock obtains from their images. Alaska Stock sold Houghton Mifflin limited licenses to copy and distribute limited numbers of copies of the designated images. Houghton Mifflin greatly exceeded the license limits. The complaint alleges that this was a willful and fraudulent business method, designed to lull licensors into a false confidence, because having placed a photograph with a stock

agency, a photographer would assume nothing untoward when he saw it reproduced in a school textbook.

The United States has filed an amicus brief in support of Alaska Stock, urging that we reverse. The position of the United States is that the Copyright Office "has long interpreted the Copyright Act to permit an application to seek registration of a collective work and the component works that the claimant owns, even if the application does not specify the authors and titles of the component works." The government's brief says that internal guidance for the copyright examiners has, consistent with this position, provided that registration of a collective work also registers independently copyrightable works within the component work. The Copyright Office takes the position that only the author of the collective work, not the individual authors of separate contributions, need be provided in the application. The names of three authors followed by a statement "and [number] others" suffices, as the letter from the Office to the trade association said. Circulars from the Office say the same thing. Alaska Stock complied with Copyright Office procedures. The United States says that this has been the Copyright Office interpretation "[f]or more than thirty years, since the Copyright Office started registering works under the Copyright Act of 1976." In addition to a deference argument, the government makes a pragmatic argument, that "[m]any traditional forms of collective works, such as newspapers and magazines, can contain hundreds – if not thousands – of copyrightable works that the claimant owns but did not author," and listing them individually would be unduly burdensome for applicants.

**Analysis**

We review de novo.[2]

One can own a copyright without registering. When a photographer has fixed an image in a tangible medium of expression, he owns the copyright, even though he has not registered it with the Copyright Office.[3] Registration is permissive, not mandatory, and may be made long after the work comes into existence.[4] The owner has various exclusive rights in the work, regardless of whether it is registered.[5] The photographer may transfer ownership of the copyright in whole or in part, and any of the exclusive rights of a copyright owner may be transferred and owned separately.[6] The owner to whom any particular right is transferred is entitled to all the protection and remedies of a copyright owner to the extent of the right transferred. It is undisputed that the limited assignments by the photographers to Alaska Stock were valid transfers, and that Alaska Stock is the owner of the copyrights for the purposes relevant to this case.

What this case concerns is registration, not ownership. Though an owner has property rights without registration, he

---

[2] *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1139 (9th Cir. 2010).

[3] *See* 17 U.S.C. § 102(a).

[4] 17 U.S.C. § 408(a).

[5] *See* 17 U.S.C. § 106.

[6] 17 U.S.C. § 201(d).

needs to register the copyright to sue for infringement.[7] Registration prior to infringement or, if the work is published, within three months of publication, is necessary for an owner to obtain statutory damages and attorneys' fees.[8]  In this case, the photographers owned the copyrights and assigned ownership for registration purposes to Alaska Stock, which did indeed register them.

When a registration application is approved, the Register "shall register the claim" and issue a certificate of registration.[9]  This certificate is not merely proof that an application was filed.  It is an administrative approval.  The Register makes a determination after examination whether the statutory requirements for registration are met, and either grants or refuses a registration certificate depending on that determination.[10]  If a certificate is refused, the applicant must be given notice of the reasons, which would enable the applicant to cure such defects as are alleged in this case.[11] The Register granted certificates to Alaska Stock, which she could only do if after examination she determined that the legal and formal requirements for registration were met. Alaska Stock lost in district court on the theory that its registration was defective.

---

[7] 17 U.S.C. § 411(a).

[8] 17 U.S.C. § 412.

[9] 17 U.S.C. § 410(a).

[10] *See id.* § 410(a)–(b).

[11] *Id.* § 410(b).

The issue in this case arises because the phrase in the statute delegating authority to the Register to prescribe the forms used for registration applications says that the application "shall include" "the name . . . of the author or authors" and "the title of the work," among other things.[12]

---

[12] 17 U.S.C. § 409.  In relevant part, that subsection provides:

> The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include—
>
> (1) the name and address of the copyright claimant;
>
> (2) in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors, and, if one or more of the authors is dead, the dates of their deaths;
>
> (3) if the work is anonymous or pseudonymous, the nationality or domicile of the author or authors; . . .
>
> . . .
>
> (5) if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright;
>
> (6) the title of the work, together with any previous or alternative titles under which the work can be identified; . . .
>
> . . .
>
> (9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered[.]

The Register of Copyrights has authority to permit "a single registration for a group of related works."[13]   The issue is whether the Register could prescribe a form and grant certificates extending registration to the individual photographs at issue where the names of each of the photographers were not provided, and titles for each of the photographs were not provided, on the applications.

First, names.  The statute requires that the application include "the name and address of the copyright claimant,"[14] "the name and nationality or domicile of the author or authors,"[15] and if the "claimant is not the author, a brief statement of how the claimant obtained the ownership of the copyright."[16]  Alaska Stock gave its name and address as the claimant and a statement of how it came to be the owner.

The issue of names arises from the provision requiring "the name and nationality or domicile of the author or authors."[17]    Pursuant to the Register of Copyright's longstanding procedure, Alaska Stock's applications gave three names and said how many other authors there were. The Register of Copyrights granted certificates based on these applications.  Addressing this practice, the Associate Register

---

[13] 17 U.S.C. § 408(c)(1).

[14] *Id.* § 409(1).

[15] *Id.* § 409(2).  If the work is anonymous or pseudonymous, only "nationality or domicile of the author or authors" must be listed.  *Id.* § 409(3).

[16] *Id.* § 409(5).

[17] *Id.* § 409(2).

for Registration and Recordation of the United States Copyright Office filed a declaration stating that "[s]ince 1980, the Copyright Office has permitted, as a matter of practice, copyright registrations of collective works to cover underlying contributions where the rights in those contributions belong to the claimant even though the individual contributors are not named in the registration form." She attached a portion of the Copyright Office, *Compendium II: Compendium of Copyright Office Practices* (1984), corroborating her declaration. The Compendium says "the names of the individual authors of separate contributions being registered as part of the claim need not be given on the application."

Thus there is no question that Alaska Stock provided names as required by the Register of Copyrights pursuant to a longstanding administrative practice. And there is no question that Alaska Stock did not provide names of the authors of each of the photographs registered.

Second, titles. The statute requires a "title" for the "work," but only "an identification of any preexisting work or works that it is based on or incorporates" for compilations or derivative works.[18]

> The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include . . .
>
> . . .

---

[18] 17 U.S.C. § 409(6), (9).

(6) the title of the work, together with any previous or alternative titles under which the work can be identified; . . .

. . .

(9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered[.][19]

Alaska Stock provided titles for each work it registered, such as "Alaska Stock CD catalog 4," and identified the contents with such phrases as "CD catalog of stock photos." The applications did not provide titles for each photograph.

The district court concluded that the Copyright Office practice could not be reconciled with the statute, as to both authors and titles, so the registrations were inadequate. Houghton Mifflin argues that the statute unambiguously requires the names of all the authors and titles of all the constituent works. This tension between at least a superficial reading of the statutory text and the long standing administrative practice, remains a serious issue.

For titles, the statutory text and administrative practice are easily reconciled. The statute does not say that the registration application must include a "title" for each constituent work, just an "identification" of any "preexisting work or works"—Alaska Stock identified the contents with

---

[19] *Id.*

such phrases as "CD catalog of stock photos" and with CDs showing each image, even though it did not give each image a title.

The requirement that the application must include the "title of the work" refers to the collective work itself. The statute expressly requires only "identification," in the singular, not titles of preexisting works incorporated, and a "brief, general statement of the additional material being covered."[20]  The definitions section defines a "collective work" in the singular, distinguishing it from "contributions" therein.[21]  Thus, the statute requires a title for "the work," in the singular, which would be the collective work in this case. There is no inconsistency between the statutory language and the Copyright Office procedure, allowing identification of the "work" without requiring titles for each constituent of the work.

The same analysis, that the "work" is what needs an author designated, applies to the authors subsection, even though unlike the "title" requirement it mentions "authors" in the plural:

> The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include . . . (2) in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or

---

[20] 17 U.S.C. § 409(9).

[21] 17 U.S.C. § 101.

> authors, and, if one or more of the authors is
> dead, the dates of their deaths[.]**[22]**

This subsection says that the name of the author or authors of "the work" must be provided, the statute defines a "collective work" as being a type of "work,"[23] and here, the author of the collective work was Alaska Stock. The references to nationality and domicile have to do with the provisions for protection of works of foreign origin in another section of the statute,[24] which are immaterial to this case. The "author or authors" that must be listed in this context are the author or authors of the collective work itself, and the applications in this case do name the author of "the work," Alaska Stock.

Houghton Mifflin argues that because the word "work" is used to refer to an individual "copyrighted work" elsewhere in the Copyright Act, it must have that meaning in section 409. This argument arguably shows that the term "work" is ambiguous, but does not tell us which sense of the word "work" must be applied in the context of registering collective works. Moreover, Houghton Mifflin's interpretation of section 409 would render another portion of the Copyright Act superfluous. Section 408(c)(2)(B) requires single registrations of certain previously published works to identify each work and "its date of first publication." This requirement is redundant if section 409(8), imposing an identical requirement, applies to constituent works as well as to collective works. We should not "adopt an interpretation

---

[22] 17 U.S.C. § 409(2).

[23] 17 U.S.C. § 101.

[24] 17 U.S.C. § 104.

of a congressional enactment which renders superfluous another portion of that same law."[25]

Additionally, Houghton Mifflin points us to what it sees as the "purpose" of registration: to create a public record of "what specific works of intellectual property are registered." It contends that "[v]alidating registrations that intentionally lack the basic identifying information that Section 409 requires would make that goal unattainable." This policy argument suggests that numerous images by "Phillip Photographer" entitled "Mt. McKinley" would somehow identify the images more specifically than the images themselves, which were on the CDs.

The government makes a practical policy argument to the contrary in its brief, that the expensive and error-prone tedium of the Copyright Office typing all the names into its records may explain why the Register of Copyrights was satisfied to have the names of only three authors for so many years. The government suggests that the elimination of this typing, because of electronic registrations, explains why the Register now is experimenting with new provisions requiring more information on material included within collective works.

A 2011 interim rule explicates the administrative history relating to stock agency registrations. Subsequent to the registrations at issue in this case, the Copyright Office began beta testing of new procedures. A 2007 interim regulation addressed "the Beta test phase of the electronic, online

---

[25] *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988).

registration system."[26]   Then in 2011, the Copyright Office issued interim regulations for a pilot program for registration of automated databases and group registrations of photographs.  The Office recited that for many years, "stock photography agencies have been able to obtain registrations covering all the photographs added to their databases within a three-month period when they have obtained copyright assignments from the photographers."[27]  This alludes to the administrative practice the agency followed with Alaska Stock.  The interim rule, setting out what forms to use, says that, even as of 2011, "questions remain about the capacity of the system to accommodate applications listing very large numbers of authors or titles," which may affect file size and transmission speed.[28]

The regulations in effect when Alaska Stock registered the catalogs at issue do not add much regarding names and titles.  They do not say one way or the other whether the names of each of the authors and titles of each of the contributions have to be listed.

The regulations do make clear the registration status of separate contributions to collective works.  "Registration of an unpublished 'collection' extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection."[29]

---

[26] 72 Fed. Reg. 36,883 (July 6, 2007).

[27] 76 Fed. Reg. 4072, 4073 (Jan. 24, 2011).

[28] *Id.* at 4074.

[29] 37 C.F.R § 202.3(b)(3) (2006), *recodified at* § 202.3(b)(4).

Where as here, the photographers have assigned their ownership of their copyrights in their images to the stock agency, and the stock agency registers the collection, both the collection as a whole and the individual images are registered.[30]

Houghton Mifflin argues that a regulation requiring a continuation sheet to list titles within a collection shows that the Register does indeed require listing of all titles.[31] This argument is meritless, because the regulation it depends on has an effective date of July 6, 2007, subsequent to all the registrations at issue in this case.[32] While the previous version of the regulation provided for continuation sheets if applicants needed more space, it does not mandate, as the new regulation does, identifying titles and authors of the component works in a collection registered as an automated database.[33]

The record reflects that the Register of Copyrights issued certificates of copyright on each of the registrations at issue. The statute saying what must be in an application appears to be addressed to her: "The application shall be made on a form prescribed by the Register of Copyrights and shall include

---

[30] *See* Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.16(B)(5)(c) (2013).

[31] *See* 37 C.F.R. § 202.3(b)(3).

[32] *See* 72 Fed. Reg. 36,883, 36,886 (July 6, 2007).

[33] *See* 37 C.F.R. § 202.3(b)(9) (2006); *see also* 72 Fed. Reg. 36,883, 36,886, 36,888 (July 6, 2007).

. . . ."[34]  If an aggrieved party objected to the Register's long standing procedure regarding stock photo agency registrations, petitions to the agency, participation in rule making, and actions for violations of the Administrative Procedure Act might have afforded remedies.[35]

The Register of Copyrights does not perform a mere clerical function of recording applications.  Instead, the Register makes a judgment after examining an application.  "When, after examination, the Register of Copyrights determines" that the requirement of the statute are met, she registers the claim and issues a certificate, as she did in this case.[36]  When she determines that "the claim is invalid" she refuses registration and provides written notice of the reasons why.[37]  Though the certificate is not binding upon a court, it is prima facie evidence of the validity of the copyright.[38]  The regulations provide for an appellate process when registration is denied.[39]  Thus, the agency charged with responsibility for administering the Copyright Act has determined for each of the applications at issue that it was valid in all respects.  Had the Copyright Office declined Alaska Stock's applications and given notice that titles and authors for all the images must

---

[34] 17 U.S.C. § 409.

[35] *See* 17 U.S.C. § 701(e).

[36] *See* 17 U.S.C. § 410(a).

[37] *Id.* § 410(b).

[38] *Id.* § 410(c).

[39] 37 C.F.R. § 202.5.

be provided, Alaska Stock could have submitted such applications at that time.

The Fourth Circuit recently confronted the question we face in this case and adopted the position advocated by Alaska Stock and the government. *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, addressed whether a real estate listing service had properly registered the individual photographs of properties contained within their listings by registering their listings as a database.[40]   A competing real estate listing service used these individual images without permission.  The defendants in that case made the same argument Houghton Mifflin makes here, namely, that the "failure to identify names of creators and titles of individual works as required by 17 U.S.C. § 409(2) and (6) limits the registration[s] to the Database itself and therefore that the registration[s] do[ ] not extend to the individual elements in the Database."[41]   The Fourth Circuit rejected this argument, holding that "collective work registrations [are] sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well."[42] We agree.

The Fifth Circuit held similarly in *Szabo v. Errison* that a musician who filed a single registration for his collection of

---

[40] *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013).

[41] *Id.* at 597 (alteration marks original and internal quotation marks omitted).

[42] *Id.* at 598.

his "Songs of 1991" succeeded in registering individual songs within the collection.**43**   *Szabo* rejected the argument that because he had not listed titles for each of the songs, he had not registered the constituent songs, the same argument Houghton Mifflin makes here.  *Szabo* applies the rule that "when one copyrights a collection, the copyright extends to each individual work in the collection even though the names of each work are not expressly listed in the copyright registration."**44**

A Second Circuit case holds that the registration of a collective work, Allure magazine, did not register the copyright in a component work where it did not own the copyright to the component work and failed to list its author or title.**45**   Alaska Stock does own the copyrights to the components of the collective works.  The Second Circuit clarified in an order denying rehearing in that case that if "all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work" even if the authors and titles of the constituent works are not listed.**46**   The Third Circuit also

---

**43** *Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

**44** *Id.* at 943.

**45** *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 71–72 (2d Cir. 2001), *as clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002), and *abrogated on other grounds by Reed Elsevier, Inc.*, 559 U.S. 154.

**46** *See Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002)  (denying rehearing and clarifying previous opinion).  The panel opinion had previously relied on section 409 of the Copyright Act to hold that a magazine publisher had not registered an article contained in one of its magazines because the publisher did not include the author and title of

agrees that registration of a collective work suffices to allow suit on the individual components,[47] though not in response to the specific argument that the statute requires the individual authors and titles of the component works to be listed on the registration application for the registration to be effective.

*Nimmer on Copyright* agrees as well, explaining that if the copyright owner of the collective work is not merely a licensee, but also the copyright owner of the components, registration of the collective work registers the components.[48] Nimmer reasons that the registration of a collective work should effect registration of the component works, even if the individual titles are not listed in the registration.[49]   We recognize that Houghton Mifflin's position has prevailed in

---

the article on its registration application. *Morris*, 259 F.3d at 71–72. The order denying rehearing clarified the opinion to say expressly that the requirement of listing all the names does not apply if the claimant owns the copyright to the constituent works as well as the collective work it is registering, as Alaska Stock did at the time it registered them. *See Morris*, 283 F.3d at 505.

[47] *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204, 206 n.2 (3d Cir. 2005) ("Although the issue is not before us on appeal, we note that decisions of this Court and others counsel that registration of a collective work is sufficient to support an action for infringement of the underlying self-contained parts.").

[48] Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.16(B)(5)(c) (2013).

[49] *Id.*

one published and several unpublished district court decisions,[50] but we do not agree with them.

We have held that "[w]hen interpreting the Copyright Act, we defer to the Copyright Office's interpretations in the appropriate circumstances."[51] Here, where the Copyright Office has announced its interpretation primarily through "internal agency manuals [and] opinion letters, we defer to the Copyright Office's views expressed in such materials only to the extent that those interpretations have the power to persuade."[52]

---

[50] *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.,*712 F. Supp. 2d 84, 92–94 (S.D.N.Y. 2010); *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 6185200, at *10–13 (N.D. Cal. Nov. 19, 2013); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 3168624, at *3 (D. Ariz. Aug. 10, 2010). *But see Panoramic Stock Images, Ltd. v. McGraw-Hill Companies, Inc.*, __ F. Supp. 2d __, 2013 WL 4047651, at *2–7 (N.D. Ill. Aug. 9, 2013); *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, __ F. Supp. 2d __, 2013 WL 4551666, at *7–9 (N.D. Ill. Aug. 28, 2013); *Masterfile Corp. v. Gale*, 2011 WL 4702862, at *1–2 (D. Utah Oct. 4, 2011).

[51] *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, __ F.3d __, 2014 WL 69000, at *2 (9th Cir. Jan. 9, 2014); *see also Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230–31 (9th Cir. 1998) (The Copyright Office's "interpretations are entitled to judicial deference if reasonable.") (quoting *Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 473 (9th Cir. 1991)).

[52] *Inhale, Inc.*, 2014 WL 69000, at *2 (internal quotation marks omitted). The Copyright Office also announced its position by promulgating copyright forms. Because the forms created by the Copyright Office are statutorily authorized, it is possible that they qualify for the more deferential *Chevron* deference under *Mead*. *See United States v. Mead Corp.*, 533 U.S. 218, 227–31 (2001); *see also Batjac Prods. Inc.*, 160 F.3d at 1231 ("The Register's position is reasonable and consistent with our review of the contemporaneously used registration forms used under the

We find the Copyright Office's interpretation persuasive. Thus, we conclude that Alaska Stock successfully registered the copyright both to its collections and to the individual images contained therein.[53]     The statute required identification of the author and title of the "work," which was the collective work, and extended registration to the component parts if the party registering the collective work owned the copyright to the component parts, as Alaska Stock did.  The procedure applied for over three decades by the Register of Copyrights to registration by stock photo agencies complied with the statutory requirements and did not violate any clear requirement to list individual authors and titles of the components within the work.  While arguably the statute could be read otherwise, the Register of Copyrights' reading that a collection of stock photos may be registered without individual titles, and without naming more than three of the authors and merely designating the number of authors, pursuant to an assignment in the language Alaska Stock used, was reasonable and persuasive.  Registration by a songwriter and singer of a CD of his songs registers both the collection and the individual songs,[54] and registration by a stock photo agency of a CD collection of images the copyright to which the stock agency owns, registers both the collection and the individual images.

---

1909 Act.  We conclude that it is entitled to deference.").  We need not decide this question, however, as we conclude that the Copyright Office's position is persuasive under less stringent *Skidmore* deference.

[53] We therefore do not reach the question of whether 17 U.S.C. § 411(b) would have excused Alaska Stock's "failure" to list the titles and authors of the individual photographs.

[54] *See Szabo*, 68 F.3d at 943–44.

*Chevron* and its progeny generally articulate several reasons for deferring to administrative interpretation, including gap filling pursuant to implicit or explicit delegation to the agency, expertise of the agency in addressing technical and complex matters, and resolution of policy debates by "legislators and administrators" rather than judges.[55]  While these considerations counsel in favor of deference in this case, an even stronger reason does as well.

A longstanding administrative interpretation upon which private actors have relied aids in construction of a statute precisely because private parties have long relied upon it.[56] The Supreme Court said long ago in *United States v. Hill* that "[t]his principle has been applied, as a wholesome one, for the establishment and enforcement of justice, in many cases in this court, not only between man and man, but between the government and those who deal with it, and put faith in the action of its constituted authorities, judicial, executive, and administrative. . . . A contemporaneous construction, by the officers upon whom was imposed the duty of executing those statutes, is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned."[57]  The Court instructed in modern times that "[i]n light of . . . substantial reliance interests, the

---

[55] *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837, 864 (1984).

[56] 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 49:3 (7th ed. 2012).

[57] 120 U.S. 169, 182–83 (1887) (internal quotation marks omitted).

longstanding administrative construction of [a] statute should 'not be disturbed except for cogent reasons.'"[58]

We are not performing a mere verbal, abstract task when we construe the Copyright Act. We are affecting the fortunes of people, many of whose fortunes are small. The stock agencies through their trade association worked out what they should do to register images with the Register of Copyrights, the Copyright Office established a clear procedure and the stock agencies followed it. The Copyright Office has maintained its procedure for *three* decades, spanning multiple administrations. The livelihoods of photographers and stock agencies have long been founded on their compliance with the Register's reasonable interpretation of the statute. Their reliance upon a reasonable and longstanding administrative interpretation should be honored. Denying the fruits of reliance by citizens on a longstanding administrative practice reasonably construing a statute is unjust.

**REVERSED AND REMANDED.**

---

[58] *Zenith Radio Corp. v. United States*, 437 U.S. 443, 457–58 (1978).