18-2110 (L)
*Sohm v. Scholastic Inc.*

# United States Court of Appeals
## For the Second Circuit

August Term 2018

Argued: June 14, 2019
Decided: May 12, 2020

Nos. 18-2110, 18-2245

JOSEPH SOHM, VISIONS OF AMERICA, LLC,

*Plaintiffs-Appellants-Cross-Appellees,*

*v.*

SCHOLASTIC INC.,

*Defendant-Appellee-Cross-Appellant.*

Appeal from the United States District Court
for the Southern District of New York
No. 16-cv-7098, J. Paul Oetken, *Judge.*

Before: POOLER, CHIN, AND SULLIVAN, *Circuit Judges.*

Joseph Sohm and Visions of America, LLC sued Scholastic Inc. for copyright infringement on photographs Sohm had authored. The district court (J. Paul Oetken, *J.*) granted in part and denied in part the parties' motions for partial summary judgment, determining that Scholastic had infringed Sohm's copyright for six of the photographs, while dismissing all other claims. We affirm in part and reverse in part, holding that (1) the district court properly recited the elements

of a copyright infringement claim and placed the burden of proof on Sohm to demonstrate that Scholastic's use of his images was outside the scope of the license; (2) *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) did not abrogate this Circuit's adoption of the "discovery rule" for copyright infringement claim accrual in *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014); (3) the Copyright Act limits damages to the three years prior to when a copyright infringement action is filed; and (4) the registration of a compilation of photographs under 17 U.S.C. § 409 by an applicant who holds the rights to the component works is valid and effectively registers the underlying individual photos, even if the compilation does not list the individual authors of the individual photos.

AFFIRMED IN PART, REVERSED IN PART.

MAURICE HARMON (Christopher Seidman, Amanda L. Bruss, & Mariel D. Murphy, *on the brief*), Harmon Seidman & Bruss, LLC, Grand Junction, Colorado, *for Plaintiffs-Appellants-Cross-Appellees* Joseph Sohm & Visions of America, LLC.

EDWARD H. ROSENTHAL (Nicole Bergstrom, *on the brief*), Frankfurt Kurnit Klein & Selz, P.C., New York, New York, *for Defendant-Appellee-Cross-Appellant* Scholastic Inc.

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiffs-Appellants-Cross-Appellees Joseph Sohm and Visions of America, LLC (together, "Sohm") bring this action against Defendant-Appellee-Cross-Appellant Scholastic Inc. for copyright infringement with respect to 89 photographs authored by Sohm. The district court (Oetken, *J.*) granted in part and denied in part the parties' cross motions for partial summary judgment,

determining that Scholastic had infringed Sohm's copyright for six of the photographs. On appeal, Sohm contends that the district court (1) erred in finding that Scholastic's use of Sohm's copyrighted work sounded in breach of contract and not copyright infringement; (2) improperly shifted the burden of proof to Sohm to demonstrate that Scholastic exceeded the scope of its license; and (3) incorrectly dismissed Sohm's claim corresponding to a certain photo. Scholastic cross appeals, arguing that the district court erred in (1) holding that the discovery rule applies for statute of limitations purposes in determining when Sohm's claims accrued; (2) allowing damages for more than the three years prior to when the copyright infringement action was brought; and (3) finding that certain group registrations were valid under the Copyright Act for Sohm's individual photographs. We **AFFIRM IN PART** and **REVERSE IN PART**.

## I. Background

Sohm is a professional photographer and the author of the 89 photographs at issue in this case. *Sohm v. Scholastic Inc.*, No. 16-cv-7098, 2018 WL 1605214, at *1 (S.D.N.Y. Mar. 29, 2018). Scholastic is a publisher and distributor of children's books. *Id.* Sohm entered into agreements with agencies, including The Image Works, Inc., Continuum Productions Corp. (now Corbis Corp.), and Photo

3

Researchers, Inc., to issue limited licenses to third parties on his behalf. *Id.* Those agencies issued limited licenses to Scholastic to use Sohm's photographs and sent monthly royalty statements and payments to Sohm. *Id.* In 2004, Corbis entered into a preferred vendor agreement ("PVA") with Scholastic that established fees for certain print-run ranges of Sohm's photos. *Id.*

In the 1990s, Sohm participated in Corbis's copyright registration program. *Id.* Under the program, Sohm temporarily assigned his copyrights to Corbis for registration purposes, with the understanding that Corbis would reassign the copyrights to him after registration. *Id.* Corbis registered a number of Sohm's photographs with the Copyright Office as part of several published group registrations in its own name. *Id.* at *3. None of these group registrations identified by name either Sohm or Visions of America as an author. *Id.*

In May 2016, Sohm sued Scholastic for copyright infringement, alleging that Scholastic infringed his copyrights by using his photos in various publications in numbers exceeding the print runs contemplated in the invoices governing Scholastic's licenses. *Id.* at *2. In an amended complaint filed in October 2016, he alleged 117 infringing uses of 89 photographs. *Id.* The parties each moved for partial summary judgment as to certain uses. *Id.*

4

The district court granted in part and denied in part the motions. The court began by stating the elements of a copyright infringement claim, which it formulated as "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Id.* (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)). It noted that the existence of a license is treated as an affirmative defense, meaning that Scholastic had the burden to prove its existence, but stated that "[w]hen the contested issue is the scope of a license, rather than the existence of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." *Id.* (quoting *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 569 (S.D.N.Y. 2016)). Because Sohm's ownership of the copyrights was undisputed, the court found that the case turned on the second element: whether Sohm could establish "unauthorized copying." *Id.*

The court first considered Scholastic's motion for partial summary judgment on the grounds that (1) Sohm's copyright registrations were invalid for certain photographs; (2) Scholastic did not exceed the relevant licenses for certain uses; and (3) Sohm had failed to meet his burden to show that Scholastic exceeded the license with respect to certain uses. *Id.* at *3. Scholastic challenged the validity

5

of the copyright registration based on group registration under Corbis's name, asserting that the registrations failed to list the name of the "author" as required by 17 U.S.C. § 409(2). The court explained that there is no binding Second Circuit authority on the question of whether the registration of a compilation of photographs under § 409 by an applicant that holds the rights to the component works also effectively registers the underlying individual photos, even if the compilation does not list the individual authors of the individual photos. *Id.* at *3–6. The court acknowledged that *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010), concluded that the plain language of the Copyright Act, which requires "the name and nationality or domicile of the author or authors" to be included in a registration, 17 U.S.C. § 409(2), rendered this type of group registration insufficient to constitute registration of the individual images therein. *Sohm*, 2018 WL 1605214, at *4. However, the court noted, the Ninth Circuit reached the opposite conclusion in *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673 (9th Cir. 2014). *Alaska Stock* held that if photographers have assigned their copyright to the stock agency and the agency registers the collection, "both the collection as a whole

6

and the individual images are registered," even if only the agency's name is listed as an author. *Id.* at 682.

The district court adopted *Alaska Stock*'s reasoning, agreeing that the operative word in § 409(2) is "work," not "author." *Sohm*, 2018 WL 1605214, at *4. The name of the author of the "work" must be provided, and, in Sohm's case, the author of the collective work – Corbis – was in fact included in the registration. The court determined that *Muench* improperly relied on 17 U.S.C. § 103 in rejecting this interpretation, as § 103 deals with the subject matter of copyright rather than the conceptually distinct issue of registration. *Id.* The court reasoned further that *Alaska Stock*'s interpretation was bolstered by the longstanding practice of the Copyright Office and its manuals and opinion letters, which were entitled to *Skidmore*[1] deference – particularly in light of policy considerations such as efficiency. *Id.* at *5. Because registration of an unpublished collection extends to each copyrightable element therein, the court concluded that the valid group registration also registered each individual image. *Id.* at *5–6 (citing 37 C.F.R. § 202.3(b)(4) (2018)).

---

[1] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

7

The district court then turned to Scholastic's claim that there was insufficient evidence of unauthorized copying. *Id.* at *8–9. For one group of 12 uses, the undisputed facts demonstrated that Scholastic did not exceed the print runs under the licenses. Sohm maintained that Scholastic could not prove that it did not violate the licenses' geographic limitations, even if it did not exceed their print runs, but the court determined that Sohm, not Scholastic, bore the burden on this question because the scope, not the existence, of the licenses was in question. *Id.* The court therefore granted summary judgment to Scholastic as to these 12 uses. *Id.* at *9.

For another group of 43 uses, the court found that Sohm had failed to offer any evidence that a use occurred at all and thus granted summary judgment to Scholastic as to these uses as well. *Id.* As part of this group, the court included a claim corresponding to Exhibit 5 to the First Amended Complaint, Row 4, concerning a photo of a steam engine in Scholastic's publication *Wheels*.

For the final 36 uses, Scholastic contended that Sohm had not satisfied his evidentiary burden to prove that the uses were infringing. Sohm did not dispute this assertion but attributed the shortcoming to Scholastic's failure to provide invoices and usage information and sought to withdraw the claims without

8

prejudice. *Id.* The court determined that dismissal without prejudice was inappropriate, primarily due to the extent to which suit had progressed and the duplicative expense of relitigation. Consequently, the court dismissed the claims with prejudice. *Id.*

The court next considered Sohm's motion for partial summary judgment based on 13 uses Scholastic did not dispute exceeded the authorized print run. *Id.* at *10. Scholastic averred that it could not be held liable for infringement as to these uses because (1) Sohm's claims are barred by the Copyright Act's limitations provision; (2) Sohm's damages should be limited to those incurred within the three years before commencement of the suit; and (3) under Scholastic's PVAs with Corbis, the relevant print-run limitations were contractual covenants, not conditions precedent, meaning that the claims for exceeding the limitations sounded in breach of contract, which was not pleaded by Sohm, rather than copyright infringement. *Id.* at *10–14.

Considering Scholastic's statute of limitations claim first, the court applied the discovery rule and rejected Scholastic's assertion that Sohm, with due diligence, should have discovered the infringing acts more than three years prior to when he brought suit. *Id.* at *10–11. The court concluded that Scholastic had

9

failed to identify affirmative evidence of any information that could have prompted an inquiry by Sohm. *Id.* at *11.

Second, the court found Scholastic's contention that damages should be limited to the three years prior to the suit irrespective of the statute of limitations unavailing. *Id.* The court noted that the issue has split district courts in this Circuit post *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), but ultimately reasoned that *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014), remained good law and that *Petrella* should not be read to establish a time limit on the recovery of damages distinct from the statute of limitations. *Sohm*, 2018 WL 1605214, at *11.

Third, the district court analyzed Scholastic's assertion that the print-run limitations in its Corbis licenses were covenants, rather than conditions. *Id.* at *12–14. Applying New York law, the court found that the payment terms in Corbis's PVAs with Scholastic did not contain sufficiently unmistakable language to give rise to a condition precedent and were therefore contractual covenants. *Id.* at *13. Sohm's claims therefore sounded in breach of contract, which he had not pleaded. Accordingly, the court granted summary judgment to Scholastic on these claims. *Id.* at *14.

The district court last considered Sohm's claims as to images licensed by Photo Researchers and Image Works, found that Scholastic had not raised a genuine dispute of fact as to whether it had infringed those copyrights, and granted summary judgment to Sohm. *Id.* at *14.

The parties settled the remaining claims, which were scheduled for trial, but they reserved their rights to appeal aspects of the district court's summary judgment rulings.

## II. Discussion

On appeal and cross-appeal, Sohm and Scholastic each raise three challenges to the district court's summary judgment. Sohm contends that the district court erred by (1) "finding, with respect to images Scholastic obtained from Corbis, that Sohm can sue only for breach of contract and not copyright infringement" because the print-run limitations were conditions precedent, not contractual covenants, Sohm's Br. at 15; (2) shifting the burden of proof to Sohm to demonstrate that Scholastic exceeded the scope of its license; and (3) incorrectly dismissing "Sohm's claim corresponding to Row 4 of Exhibit 5 to the First Amended Complaint," *id.* at 36–37. Scholastic maintains that the district court erred when it (1) applied the "discovery rule," not the "injury rule," to determine

when Sohm's claims accrued for statute of limitations purposes, Scholastic's Br. at 33–35; (2) allowed damages for more than the three years prior to when the copyright infringement suit was filed; and (3) determined that Corbis's group registrations, which did not indicate that Sohm or Visions of America was the author of any included photographs, were valid under the Copyright Act for Sohm's individual photographs.

"We review *de novo* the [d]istrict [c]ourt's partial grant and partial denial of summary judgment." *Psihoyos*, 748 F.3d at 123.

A. Sohm's Arguments on Appeal

1. The District Court Misconstrued Sohm's Claims as Contract Claims Rather Than Copyright Infringement Claims

Sohm alleged that Scholastic committed copyright infringement by exceeding the print-run limitations contained in the license documents. The district court, however, found that the license provisions were contractual covenants, and thus that his claims sounded only in breach of contract. Sohm maintains that the court "erred in its condition / covenant analysis, ignoring clear language of condition in the [license] documents." Sohm's Br. at 13. He contends that the district court misconstrued unmistakable language of conditions

12

precedent, and therefore that he properly brought claims sounding in copyright infringement, not breach of contract. We agree.

"Generally, 'if the licensee's improper conduct constitutes a breach of a covenant undertaken by the licensee and if such covenant constitutes an enforceable contractual obligation, then the licensor will have a cause of action for breach of contract,' not copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) (brackets and alteration omitted) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A]). "However, 'if the nature of a licensee's violation consists of a failure to satisfy a condition to the license, it follows that the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright.'" *Id.* at 237 (brackets and alteration omitted) (quoting 3 *Nimmer on Copyright* § 10.15[A]).

Under New York law, a covenant is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 112 (1984) (citation omitted). A

13

condition precedent, on the other hand, is "an act or event . . . which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (citation omitted). "New York respects a presumption that terms of a contract are covenants rather than conditions," *Graham*, 144 F.3d at 237, and "[c]onditions precedent are not readily assumed," *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016). Nevertheless, though conditions precedent must be "expressed in unmistakable language," *id.* at 305 (quoting *Oppenheimer*, 86 N.Y.2d at 691), "specific, talismanic words are not required," *id.* "[L]inguistic conventions of condition—such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to[]'"—can "make plain" a condition precedent. *Id.* at 305–06. "It is . . . for the court to decide, as a matter of law, whether a condition precedent . . . exists under the terms of a contract." *Powlus v. Chelsey Direct, LLC*, No. 09-cv-10461, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10, 2011).

"[I]f 'a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.'" *BroadVision, Inc. v. Med.*

14

*Protective Co.*, No. 08-cv-1478, 2010 WL 5158129, at \*3 (S.D.N.Y. Nov. 23, 2010) (quoting *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008)).

Here, the PVAs, invoices, and documents incorporated therein constitute the license agreements between Scholastic and Corbis. *See* App'x at 164 ("Along with the Corbis invoice, these terms constitute a binding agreement ('Agreement') between you and Corbis Corporation."); *id.* at 176 ("'Agreement' means, collectively, the terms and conditions (i) herein, (ii) in the Invoice(s) and (iii) in the Specific Content Web Page(s) applicable to the Content licensed hereunder, all of which are incorporated into this Agreement by this reference.").

These license agreements granting Scholastic the right to copy Sohm's photos contain unmistakable language of conditions precedent, and therefore Sohm properly pleaded claims of copyright infringement. The Terms and Conditions incorporated into and attached to the 2004 PVA state that "[a]ny license granted by Corbis is conditioned upon (i) your meeting all conditions and restrictions imposed by Corbis, and (ii) Corbis' receipt of full payment by you for such use as invoiced by Corbis." *Id.* at 164. The Terms further state that "[u]nless otherwise specified in a separate writing signed by Corbis, your reproduction of Images is limited to (i) internal evaluation or comps, or (ii) the specific use

15

described in your invoice, which together with these terms shall constitute the full license granted." *Id.* The Terms also explain that "[e]xcept as specified in the Corbis invoice, Images obtained from Corbis are licensed on a non-transferable, one-time, non-exclusive basis, and are strictly limited to the use, medium, time period, print run, placement, size of image, territory, and any other restrictions indicated in the invoice." *Id.* The invoices, in turn, specified the quantity and uses that were licensed. *E.g.*, *id.* at 127. The Terms also explicitly warned that "[u]nauthorized use of these Images constitutes copyright infringement and shall entitle Corbis to exercise all rights and remedies under applicable copyright law." *Id.* at 164.

The Terms and Conditions incorporated into and attached to the 2008 PVA contain similar language, stating that "[a]ny and all licenses granted by Corbis are conditioned upon (i) Your compliance with all provisions of this Agreement, and (ii) Corbis' receipt of full payment by You as identified in the applicable invoice." *Id.* at 175. The Terms also state that "[e]xcept where specifically permitted on the Invoice for the applicable Content, You may not distribute, publish, display, or otherwise use in any way, the Rights Managed Content." *Id.*

16

These provisions are replete with the conditional language of conditions precedent – "unless," "conditioned upon," "except where specifically permitted" – thereby directly refuting the conclusion that the license agreements created only contractual covenants, the violation of which sounds in breach of contract. Sohm asserts that Scholastic exceeded print-run limitations contained in the invoices forming part of the license agreements, and thus he properly pleads that Scholastic has violated a restriction upon which the license is conditioned.

We are not alone in reaching this conclusion. In *Kashi v. McGraw-Hill Global Education Holdings*, No. 17-cv-1818, 2018 WL 5262733 (E.D. Pa. Oct. 23, 2018), the district court, interpreting similar license agreements to those at issue here and applying New York law, reasoned that "the language of [the PVAs], along with the invoices, create[s] a condition in unmistakable terms," *id.* at *5. "[T]hus, by exceeding the uses authorized by the invoices, Defendants violated a condition of their license agreements with Corbis," thereby entitling plaintiff to assert copyright infringement claims. *Id.* Rejecting an interpretation of the license agreements that would render provisions mere delineations of acceptable and unacceptable behavior, the court found that such an analysis would render it "virtually impossible to limit the scope of the license." *Id.* at *6. Rather, the license

17

agreements' language "clearly stated that authorization to use a photo was conditioned upon an invoice granting permissions and upon receipt of payment," and thus "put unauthorized use in excess of the quantities permitted by the invoices beyond the scope of the Agreements." *Id.* Overuse of the photos, therefore, "implicates a condition, not a covenant, and . . . any alleged breaches sound in copyright infringement, not breach of contract." *Id.* at *7.

Numerous other courts have agreed when confronted with similar circumstances. *See, e.g., Menzel v. Scholastic, Inc.*, No. 17-cv-5499, 2019 WL 6896145, at *7–9 (N.D. Cal. Dec. 18, 2019); *Krist v. Pearson Educ., Inc.*, No. 16-cv-6178, 2019 WL 6467355, at *5–8 (E.D. Pa. Dec. 2, 2019); *Krist v. Scholastic, Inc.*, 415 F. Supp. 3d 514, 533–36 (E.D. Pa. 2019); *Harrington v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 17-cv-2960, 2019 WL 1317752 (D. Colo. Mar. 22, 2019); *Pac. Stock, Inc. v. Pearson Educ., Inc.*, 927 F. Supp. 2d 991 (D. Haw. 2013). In *Harrington*, the district court interpreted substantially identical Corbis agreements to those at issue here and agreed with the *Kashi* court that "the parties' agreement expressly provided that unauthorized use of the images would constitute copyright infringement," and that use in excess of the print-run limitations was unauthorized use. 2019 WL 1317752, at *3. The court emphasized the same language in the parties' agreements

18

and rejected course of conduct evidence as insufficient to convert the case from one of copyright infringement to one of breach of contract. *Id.* In *Pacific Stock*, the court reached a similar conclusion, finding that print-run limitations in the context of a comparable PVA scheme "define the scope of the license; they are not simply covenants enforceable only through a breach of contract action." 927 F. Supp. 2d at 998.

We conclude that the language is clear on the face of the license agreements: the print-run limitations were conditions precedent, the violation of which gave rise to claims for copyright infringement. Sohm thus properly pleaded copyright infringement. Accordingly, we reverse the grant of partial summary judgment to Scholastic on this basis.

## 2. The District Court Properly Applied the Elements of Copyright Infringement to Sohm's Claims

Sohm next contends that the district court (1) misstated the elements of a claim for copyright infringement and (2) misallocated to Sohm the burden of proving that Scholastic's use fell outside the scope of the license. He first maintains that the court's version of the elements of a prima facie case – "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work," *Sohm*, 2018 WL 1605214, at *2 – erroneously included the term "unauthorized." Instead,

19

Sohm urges that the proper formulation of the second element is "copying of constituent elements of the work that are original." Sohm's Br. at 40 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

He further asserts that the district court's version of the elements of a copyright infringement case as applied in a license case, as opposed to a substantial similarity case, created an "impossible burden" in light of Scholastic's claim that "it retained no records of its original licensing." *Id.* at 41. According to Sohm, it was inappropriate to place on him the burden of showing that Scholastic's use exceeded its license because there was "no legitimate scope of license issue" where Scholastic exceeded the print runs on the face of the invoices. *Id.* at 42. He argues that Scholastic "ha[d] the burden of coming forward with proof that it had a license for the uses at issue." *Id.* at 43.

Sohm's arguments on these points fail. The district court neither erroneously misstated the elements of a claim for copyright infringement nor improperly shifted the burden of proof to Sohm to demonstrate that Scholastic exceeded the scope of its license. We therefore affirm.

"In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."

*Jorgensen*, 351 F.3d at 51. The existence of a license to engage in the challenged copying, however, is "an affirmative defense to a claim of copyright infringement . . . that the alleged infringer must plead and prove." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019); *see also Bourne v. Walt Disney Co.*, 68 F.3d 621, 630–31 (2d Cir. 1995). Nevertheless, "when the contested issue is the *scope* of a license, rather than the *existence* of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license and the license need not be pleaded as an affirmative defense." *Graham*, 144 F.3d at 236; *see also Yamashita*, 936 F.3d at 105 ("Applying these principles in the context of initial pleadings, when the *existence* of a license is not in question, a copyright holder must plausibly allege that the defendant exceeded the particular terms of the license.").

Here, the district court's recitation of the elements of a copyright infringement claim was correct in both form and substance. As *Graham* demonstrates, in cases involving licenses, we have interpreted "unauthorized" use to mean use outside of the license. 144 F.3d at 236 (requiring copyright holder to demonstrate that "defendant's copying was unauthorized under the license"); *Bourne*, 68 F.3d at 631.

21

In addition, the district court properly required Sohm to demonstrate use outside the scope of the license. Because Sohm pleaded in his complaint that licenses exist – a fact that Scholastic admits – Sohm bore the burden of proving that Scholastic's copying was unauthorized, a burden he failed to satisfy. Sohm's attempts to avoid this burden by recasting the relevant inquiry as one of the existence of a license or of the proper formulation of the elements of a copyright infringement claim are unavailing in the face of these clear principles. The district court properly framed the question as whether Scholastic had exceeded the scope of existing licenses, and therefore properly placed the burden of demonstrating unauthorized copying on Sohm. Accordingly, the court did not err in reciting the elements of a copyright infringement claim nor in requiring Sohm to demonstrate use outside the scope of the license.

### 3. Sohm Offered Sufficient Proof of Infringement to Survive Summary Judgment on the Steam Engine Photo

Sohm avers that the district court erroneously granted partial summary judgment to Scholastic on his claim at Row 4 of Exhibit 5 to the First Amended Complaint, concerning a photo of a steam engine in Scholastic's publication *Wheels*. We agree.

Sohm proffered evidence that Scholastic obtained a limited license from The Image Works to print 40,000 copies of Sohm's image in *Wheels*, but actually printed 195,500 copies. Scholastic did not dispute this evidence nor include this claim in the group of claims for which it sought summary judgment on the basis that the evidence did not show infringement. Consequently, the district court's dismissal of this claim appears to have been inadvertent. Scholastic "agrees that it did not seek dismissal of this claim under any theory agreed with by the District Court," and thus does not oppose Sohm's request that this dismissal be reversed. Scholastic's Br. at 3 n.1. Accordingly, we reverse the district court's grant of partial summary judgment to Scholastic on Sohm's claim of copyright infringement corresponding to the image at Row 4 of Exhibit 5 to the First Amended Complaint.

## B. Scholastic's Cross-Appeal

As noted above, Scholastic argues in its cross-appeal that the district court erred when it (1) applied the "discovery rule," not the "injury rule," to determine when Sohm's claims accrued for statute of limitations purposes, *id.* at 33–35; (2) allowed damages for more than the three years prior to when the copyright infringement suit was filed; and (3) determined that Corbis's group registrations, which did not indicate that Sohm or Visions of America was the author of any

23

included photographs, were valid under the Copyright Act for Sohm's individual photographs. We will address each of these contentions in turn.

    1. The District Court Properly Applied the Discovery Rule in Determining When Sohm's Copyright Claims Accrued

In *Psihoyos*, this Court adopted the "discovery rule" for determining when a copyright infringement claim accrues. 748 F.3d at 124–25. Scholastic nevertheless urges this Court to adopt the "injury rule" instead, maintaining that "in two recent decisions following *Psihoyos*, the Supreme Court cast serious doubt on the viability of the discovery rule." Scholastic's Br. at 34 (citing *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017); *Petrella*, 572 U.S. 663). We disagree and decline to alter this Circuit's precedent mandating use of the discovery rule; we therefore affirm the district court's holding that the discovery rule applies for statute of limitations purposes in determining when a copyright infringement claim accrues under the Copyright Act.

"Civil actions for copyright infringement must be 'commenced within three years after the claim accrued.'" *Psihoyos*, 748 F.3d at 124 (quoting 17 U.S.C. § 507(b)). As we noted in *Psihoyos*, we apply "a discovery rule for copyright claims under 17 U.S.C. § 507(b)." *Id.* Under that rule, "an infringement claim does not

24

'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Id.*

*Psihoyos*, as a published opinion of a prior panel, is binding precedent upon this Court "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*." *United States v. Allah*, 130 F.3d 33, 38 (2d Cir. 1997) (quoting *United States v. Ianniello*, 808 F.3d 184, 190 (2d Cir. 1986)). Scholastic contends that the Supreme Court has done just that, first in *Petrella* and subsequently in *SCA Hygiene Products*. The Supreme Court, however, has not overruled *Psihoyos*, either implicitly or explicitly, and therefore we must continue to apply the discovery rule.

*Petrella* specifically noted that it was not passing on the question of the discovery rule. *See* 572 U.S. at 670 n.4. The Supreme Court reaffirmed that position in *SCA Hygiene Products*, explaining that it had "specifically noted" in *Petrella* that it had "not passed on the question whether the Copyright Act's statute of limitations is governed by such a rule." 137 S. Ct. at 962 (internal quotation marks and citation omitted). Consequently, while some language in *Petrella* is perhaps consistent with the injury rule, in light of the Supreme Court's direct and repeated representations that it has not opined on the propriety of the discovery or injury

rules, it would contravene settled principles of *stare decisis* for this Court to depart from its prior holding in *Psihoyos* on the basis of *Petrella*.[2]

Given the continuing propriety of the discovery rule in this Circuit, we must now determine whether the district court properly applied that rule, namely, whether the court erred in finding that Sohm did not discover, nor with due diligence should have discovered, Scholastic's purported copyright infringements more than three years prior to when he filed suit. Scholastic contends that even under the discovery rule standard, Sohm's claims accrued more than three years prior to his filing suit, thereby falling outside the Copyright Act's statute of limitations and barring his claims. We find, however, that the district court did not err in rejecting these contentions and in finding that Scholastic had "failed to meet its evidentiary burden to survive summary judgment on" statute of limitations grounds. *Sohm*, 2018 WL 1605214, at *11.

---

[2] Contrary to Scholastic's contentions, the Supreme Court's recent decision in *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), does not persuade us to depart from this holding. In *Rotkiske*, the Supreme Court held that the statute of limitations of the Fair Debt Collection Practices Act ("FDCPA"), which states that an action may be brought under the FDCPA "within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d), "begins to run on the date on which the alleged . . . violation occurs, not the date on which the violation is discovered," *Rotkiske*, 140 S. Ct. at 358. *Rotkiske*'s holding, however, was based on the Court's interpretation of the FDCPA's text; the decision did not interpret the Copyright Act's statute of limitations, which states that copyright infringement claims under the Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Accordingly, *Rotkiske* is inapposite here.

The district court determined that Scholastic had failed to "identify some affirmative evidence that would have been sufficient to awaken inquiry and prompt an audit" on Sohm's part for him to have discovered the copyright infringements earlier. *Id.* (internal quotation marks and citation omitted). Scholastic merely maintains that Sohm never conducted an audit or contacted his agents to inquire about payments despite having the ability to do so. Nevertheless, without identifying facts or circumstances that would have prompted such an inquiry, Scholastic cannot rely on the passage of time alone to establish that Sohm should have discovered the alleged copyright infringements at issue in this case. Scholastic has therefore not demonstrated that Sohm's claims accrued outside the Copyright Act's statute of limitations. Accordingly, the district court properly rejected Scholastic's affirmative defense based on the Copyright Act's statute of limitations.

2. The Copyright Act Limits Sohm's Damages to the Three Years Prior to the Commencement of This Action

Scholastic next argues that even if the district court was correct to apply the discovery rule, it erred in allowing Sohm to recover damages for more than three years prior to when he filed his copyright infringement suit. Again pointing to *Petrella*, Scholastic maintains that "[t]he Supreme Court was crystal clear . . . that,

27

independent of whether the injury or discovery rule applies, '[u]nder the [Copyright] Act's three-year provision, an infringement is actionable within three years, *and only three years*, of its occurrence,' and that 'the infringer is insulated from liability for earlier infringements of the same work.'"  Scholastic's Br. at 38–39 (quoting *Petrella*, 572 U.S. at 671).

On this point, we agree with Scholastic.  Despite not passing on the propriety of the discovery rule in *Petrella*, the Supreme Court explicitly delimited damages to the three years prior to the commencement of a copyright infringement action.  Accordingly, we reverse the district court's contrary determination.

After *Petrella*, district courts in this Circuit have reached conflicting determinations regarding whether damages under the Copyright Act are limited to three years prior to when a copyright infringement case is filed.  *Compare Park v. Skidmore, Owings & Merrill LLP*, No. 17-cv-4473, slip op. at 5 (S.D.N.Y. Sept. 30, 2019) ("[T]he Copyright Act provides for a three-year lookback period – a plaintiff can bring a suit for any infringing actions in the three years before the filing date, but cannot recover damages for infringements occurring more than three years before filing."), *Papazian v. Sony Music Entm't*, No. 16-cv-7911, 2017 WL 4339662,

28

at *5 (S.D.N.Y. Sept. 28, 2017) ("[B]ecause the clear and specific three-year limitation on damages under section 507(b) was necessary to the result in *Petrella*, it cannot be construed as dicta."), *Fischer v. Forrest*, No. 14-cv-1304, 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017), *and Wu v. John Wiley & Sons, Inc.*, No. 14-cv-6746, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) ("Following *Petrella*, Wu can recover damages only for any Wiley infringing acts that occurred [not more than three years prior to filing the action].*"), *with Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, 16-cv-617, 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017) ("[U]nder no reasonable reading of *Petrella* could the opinion be interpreted to establish a time limit on the recovery of damages separate and apart from the statute of limitations."). Agreeing with the former decisions, we determine that *Petrella*'s plain language explicitly dissociated the Copyright Act's statute of limitations from its time limit on damages.

In *Petrella*, the Supreme Court initiated its examination of the Copyright Act's statute of limitations by explaining that "[u]nder the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence" and that "the infringer is insulated from liability for earlier

29

infringements of the same work." 572 U.S. at 671. It stated that "§ 507(b)'s limitations period . . . allows plaintiffs . . . to gain retrospective relief running only three years back from the date the complaint was filed." *Id.* at 672. It also explicitly asserted that "a successful plaintiff can gain retrospective relief only three years back from the time of suit" and that "[n]o recovery may be had for infringement in earlier years." *Id.* at 677. Thus, damages "outside the three-year window" before Petrella filed suit could not be recovered. *Id.* Consequently, *Petrella* and *Psihoyos* counsel that we must apply the discover rule to determine when a copyright infringement claim accrues, but a three-year lookback period from the time a suit is filed to determine the extent of the relief available.

Resisting this interpretation of *Petrella*, Sohm contends that the language from *Petrella* on which it relies was merely nonprecedential "dicta, taken out of context." Sohm Reply Br. at 29. Not so. We are bound "not only [by] the result [of a Supreme Court opinion,] but also those portions of the opinion necessary to that result." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). The *Petrella* Court partially based its determination that laches was inapplicable to actions under the Copyright Act on the conclusion that the statute "itself takes account of delay" by limiting damages to the three years prior to when suit is filed. *Petrella*,

572 U.S. at 677. Therefore, the three-year limitation on damages was necessary to the result in *Petrella* and thus binding precedent.

Accordingly, under the Copyright Act, a plaintiff's recovery is limited to damages incurred during the three years prior to filing suit. We reverse the district court's contrary conclusion.

### 3. Corbis Validly Registered Each of Sohm's Photographs

Scholastic finally argues that Sohm's copyright infringement claims based on Corbis's group copyright registrations, which did not include Sohm's name as an author, are invalid. Citing to *Muench*, Scholastic asserts that Sohm's name was required to be included in the group registrations for them to be valid under the Copyright Act, 712 F. Supp. 2d at 85, thereby rejecting the district court's contrary conclusion here and the Ninth Circuit's contrary conclusion in *Alaska Stock*. We, however, agree with the district court and the Ninth Circuit. The "author" that must be identified in a group registration under 17 U.S.C. § 409(2) is the author of the compilation, rather than the author of each underlying work, and a valid group registration works to register each individual work included in the compilation.

A certificate of copyright registration is a prerequisite to asserting a civil copyright infringement claim. 17 U.S.C. § 411(a). Thus, without a valid copyright

registration, a plaintiff cannot bring a viable copyright infringement action. The Copyright Act requires that an "application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include . . . the name . . . of the author or authors [of the work]." *Id.* § 409(2).

We must decide whether the registration of a compilation of photographs under § 409 by an applicant that holds the rights to the component works also effectively registers the underlying individual photos where the compilation does not list the individual authors of the individual photos. Our Court has yet to address this question, and the courts that have addressed it have arrived at conflicting conclusions. For example, in *Muench*, the district court concluded that interpreting the Copyright Act to allow group registrations to register the individual photographs contained therein, where the group registrations do not include the name of the authors of the individual photographs, contravened the Act's plain language. 712 F. Supp. 2d at 92. However, in *Alaska Stock*, the Ninth Circuit reached the opposite conclusion, holding that if "the photographers have assigned their ownership of their copyrights in their images to the stock agency, and the stock agency registers the collection, both the collection as a whole and the individual images are registered." 747 F.3d at 682.

32

We agree with the district court below and the Ninth Circuit. The plain language of § 409(2) does not require a group registrant like Corbis to include each individual author of each individual work in the compilation to effectively register those individual works. The key word in § 409(2) is "work" instead of "author." As the Ninth Circuit explained, "[t]his subsection says that the name of the author or authors of 'the work' must be provided, the statute defines a 'collective work' as being a type of 'work,' and here, the author of the collective work was" Corbis. *Alaska Stock*, 747 F.3d 681 (footnote omitted). Consequently, to obtain a valid group registration under § 409(2), "[t]he 'author or authors' that must be listed . . . are the author or authors of the collective work itself."[3] *Id.* The Corbis group registrations all satisfied this requirement by listing Corbis as the author of the collective work.

Accordingly, the district court properly determined that Corbis validly registered each of the photographs in the relevant group registrations.

---

[3] The Ninth Circuit reaffirmed *Alaska Stock* in *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 989 (9th Cir. 2017).

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's (1) recitation of the elements of a copyright infringement claim and its placement of the burden of proof on Sohm to demonstrate Scholastic's use of his images outside the scope of the license; (2) conclusion that the discovery rule applies for statute of limitations purposes in determining when Sohm's copyright infringement claims accrued; and (3) determination that Corbis's group registrations were valid under the Copyright Act for Sohm's individual photographs. We REVERSE the district court's (1) finding that Scholastic's use of Sohm's copyrighted work sounded in breach of contract and not copyright infringement; (2) dismissal of Sohm's claim corresponding to Row 4 of Exhibit 5 to the First Amended Complaint; and (3) allowance of damages for more than the three years prior to when Sohm filed his copyright infringement action. We further REMAND to the district court for proceedings consistent with this opinion.