20-2904-cv(L)
*Thomas & Betts Corp. v. Trinity Meyer*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22ⁿᵈ day of September, two thousand twenty-one.

PRESENT:
>   BARRINGTON D. PARKER,
>   GERARD E. LYNCH,
>   JOSEPH F. BIANCO,
>     *Circuit Judges*.

———————————————————————

Thomas & Betts Corporation, DBA ABB Installation
Products, Inc.,

>   *Plaintiff-Counter-Defendant-Appellant-Cross-Appellee*,

>   v.                                                              20-2904 (L),
                                                                    20-3109 (XAP)

Trinity Meyer Utility Structures, LLC, FKA McKinley
2014 Acquisition, LLC, DBA Meyer Utility Structures,
LLC,

>   *Defendant-Counter-Claimant-Appellee-Cross-Appellant*,

Arcosa, Inc.,

>   *Defendant-Appellee*.

———————————————————————

FOR APPELLANT-CROSS-APPELLEE:          ASHLEY C. PARRISH (Christine M. Carletta,
                                       Michael Stenglein, Adam Gray, *on the*

*brief*), King & Spaulding LLP, Washington, DC, Austin, TX.

FOR APPELLEE-CROSS-APPELLANT
    & APPELLEE:                ALLYSON N. HO (Reed Brodsky, Michael L. Raiff, Christine Demana, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY, Dallas, TX.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED**, and the matter **REMANDED** for further proceedings.

Plaintiff-Counter-Defendant-Appellant-Cross-Appellee Thomas & Betts Corporation ("T&B") appeals from a July 31, 2020 judgment of the district court dismissing with prejudice T&B's First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant-Counter-Claimant-Appellee-Cross-Appellant Trinity Meyer Utility Structures, LLC, ("Trinity"), conditionally cross-appeals from that same order and judgment to the extent that the district court dismissed its amended counterclaims against T&B. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision.

We review a district court's dismissal of a claim under Rule 12(b)(6) *de novo*. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). In doing so, we begin with "the facts alleged in the pleadings," although we may also examine "documents attached as exhibits or incorporated by reference in the pleadings." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). We construe "the complaint liberally, accepting all factual allegations in the

2

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). At the motion to dismiss stage, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This case requires us to interpret indemnification provisions in an Asset Purchase Agreement ("APA"), pursuant to which Trinity purchased T&B's steel structures business, Meyer Steel Structures ("Meyer"). In this action for breach of contract, T&B seeks indemnification from Trinity and its parent company, Arcosa, Inc. (collectively "Trinity"), for T&B's settlement of an express warranty claim by nonparty Electric Transmission Texas, LLC ("ETT") concerning defective arm brackets used in electric transmission towers that ETT purchased from T&B in 2011 (the "ETT Warranty Claim").

Under New York law, which governs the APA, it is "axiomatic" that "the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (brackets and internal quotation marks omitted). "In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Id.* Here, neither party contends that the contract is ambiguous as to the parties' indemnification rights and obligations, but each argues for different interpretations of the indemnification provisions.

3

To start, the parties dispute whether T&B's claim against Trinity is governed by Sections 6.2 and 6.3 of the APA (as Trinity argues) or by Schedule 6.1A of the APA (as T&B contends). We need not resolve that dispute, however, as we conclude that, even if Trinity is correct that the relevant provisions of Sections 6.2 and 6.3 are controlling, the district court erred in determining that vague conditional language in Section 6.2 required it to conclude that Section 6.3's notice provisions create conditions precedent to Trinity's indemnification obligations with which T&B was required to (but did not) strictly comply. Rather, assuming Trinity is correct that Sections 6.2 and 6.3 apply to T&B's claim, we conclude that Section 6.2's caveat that Trinity's indemnification obligations arise "subject to" the other provisions of Article VI is insufficient to create conditions precedent out of Section 6.3's notice requirements; that the notice provided by T&B with respect to the ETT Warranty Claim should therefore be held to a standard of substantial performance, rather than one of strict compliance; and that the FAC sufficiently alleges that T&B substantially complied with those requirements.

On the interpretation of the APA urged by Trinity and adopted by the district court, Section 6.2 of the APA sets out Trinity's indemnification obligations to T&B with respect to certain claims brought by third parties. That provision stipulates, among other things, that Trinity's obligations are "[s]ubject to the terms and conditions of this Article VI." APA § 6.2, J. App'x at 74. T&B argues that the district court erred in placing "dispositive weight on Section 6.2's opening clause" and that the district court "provided little support" for its conclusion that the "subject to" language in that clause created a condition precedent for claims against Trinity. T&B Br. at 31. We agree with T&B.

Under New York law, "[a] condition precedent . . . is 'an act or event which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (alteration omitted) (citing *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)). "Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient." *Oppenheimer*, 660 N.E.2d at 418. "Conditions are not favored under New York law, and in the absence of unambiguous language, a condition will not be read into the agreement." *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1099–100 (2d Cir. 1992); *accord Sohm*, 959 F.3d at 46 ("New York respects a presumption that terms of a contract are covenants rather than conditions, and conditions precedent are not readily assumed." (brackets, citations, and internal quotation marks omitted)). Whether a condition precedent exists under the terms of a contract is a question of law that we review *de novo*. *See Sohm*, 959 F.3d at 46.

In finding that the notice requirements in Section 6.3 constitute conditions precedent to Trinity's indemnification obligations in Section 6.2, the district court relied on language from *Sohm*, which advised that "[l]inguistic conventions of condition—such as if, on condition that, provided that, in the event that, and *subject to*—can make plain a condition precedent." Special App'x at 13 (quoting *Sohm*, 959 F.3d at 46) (emphasis in original). However, *Sohm* did not hold that mere use of the words "subject to" will overcome the law's presumption against conditions precedent. The sentence on which the district court solely relied in concluding that those words make the notice provisions into conditions precedent are part of the *Sohm* court's observation

5

that, generally, conditional language "*can*" suggest the intention to create conditions precedent. *Id* (emphasis added). It does not follow that "subject to" are magic words that *necessarily* create conditions precedent. Moreover, the observation is dictum in any event. The decision in *Sohm* did not hinge on the phrase "subject to"; rather, we found conditions precedent in that case based on the context in which the conditional language was used. Contrary to the district court's interpretation of *Sohm*, there are *no* cases under New York law which espouse a bright-line rule that the phrase "subject to" creates conditions precedent which demand strict compliance.

Rather than interpreting "subject to" as words that automatically create conditions precedent, a court must look to both the placement of the conditional language and the context in which it is used  in order to determine whether the parties intended to impose conditions precedent. As T&B points out, other portions of the APA clearly label certain provisions as conditions precedent. Article V, for example, expressly labels its requirements as "Conditions Precedent to Closing." The plain language of that Article makes clear that the itemized requirements listed immediately thereafter are conditions precedent. The applicable conditions precedent are clearly preceded by subheadings titled "Conditions to Obligations of [Buyer/Seller]" and the following language: "The obligation of [Buyer/Seller] to consummate the transactions contemplated by this Agreement to be consummated at the Closing is subject to the satisfaction . . . of the following conditions". J. App'x at 71. The conditions precedent to closing are then clearly listed.

In contrast, Article VI offers no such clarity. Article VI contains no subheadings that label any of its provisions as "conditions," let alone as "conditions precedent." The general

6

phrase "[s]ubject to the terms and conditions of this Article VI" is far less specific than that used in Article V, which clearly lists each condition precedent to closing and characterizes the list as such. We further note that, though not binding on us, the Seventh Circuit, also applying New York law, has similarly found such "subject to" language in an indemnification provision "not sufficiently precise to make prompt written notice an express condition precedent to indemnification." *Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944, 951–52 (7th Cir. 2004).

Moreover, the "subject to" language upon which Trinity and the district court rely is not found in the same section that imposes the alleged conditions precedent. Rather, the words "subject to" are contained in Section 6.2, whereas the notice procedures Trinity claims are conditions precedent are enumerated in Section 6.3. Nor does that language specifically reference the notice procedures, or even the provisions of Section 6.3 as a whole. Instead, it embraces all of "the terms and conditions of this Article VI," many of which cannot remotely be construed as creating conditions precedent to the indemnification obligations in Section 6.2.

Finally, "subject to" is used frequently throughout the APA in various provisions and in different contexts that appear to use the phrase simply to cross-reference other applicable provisions, rather than to create conditions precedent.[1] We see no reason to take the same words

---

[1] *See*, *e.g.*, APA ¶ 2, J. App'x at 33 ("Buyer desires to assume the Assumed Liabilities upon the terms and subject to the conditions set forth herein"); APA § 3.7(e), J. App'x at 62 ("Buyer takes . . . the Business and the Acquired Assets and Assumed Liabilities as-is and where-is, subject to the benefit of the representations and warranties set forth in Article II"); APA § 4.1(a), J. App'x at 63 ("Subject to the terms of this Agreement, each Party shall use reasonable efforts to take all actions and to do all things reasonably necessary or advisable to consummate the transactions contemplated by this Agreement"); APA § 7.5, J. App'x at 81 ("For the avoidance of doubt, any claim by any Party relating to a breach by another Party of its obligations under this Article VII shall be pursued in accordance with the procedures for indemnification claims, and, except as set forth in Section 7.4, shall be subject to the terms, conditions

7

in Section 6.2 to have a dramatically different effect there than they have in the rest of the APA.

The words "subject to" in Section 6.2 cannot be said to be "unmistakable language" creating a condition precedent where they do not match "unmistakable language" in another section of the same contract, where the creation of conditions precedent is actually explicit. *See Grandfeld II, LLC v. Kohl's Dep't Stores, Inc.*, 163 A.D.3d 782, 784 (2018) ("A contract should be read as a whole, with every part interpreted with reference to the whole."); *Bailey v. Fish & Neave*, 8 N.Y.3d 523, 528 (2007) (An agreement "should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases"). Where the contracting parties are sophisticated actors represented by counsel, as they are here, we must presume that they understand "how to use different words and construction to establish distinctions in meaning." *Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000); *see also Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap.*, Inc., 821 F.3d 297, 306 (2d Cir. 2016) ("The failure to couch the request-for-cure provision in the explicit language of condition is particularly significant here because the sophisticated drafters elsewhere employed precisely such language to establish undoubted conditions precedent."). The phrase "subject to" at the beginning of Section 6.2 falls short of the kind of clear conditional language that would enable us to infer the existence of conditions precedent in the face of New York's strong presumption against inferring that the parties have imposed strict conditions precedent to performance.

Our interpretation of the APA more likely corresponds with the parties' intentions. The parties carefully negotiated the division of responsibility between them for breach of express

and limitations, set forth in Article VI").

8

warranty claims such as ETT's. Interpreting the notice provisions of Section 6.3 as conditions precedent requiring strict compliance with highly specific notice requirements would result in the forfeiture of a party's substantial rights based on technical violations of those requirements. Here, the complaint alleges (and we must therefore accept as true in deciding a motion to dismiss) that Trinity was aware of ETT's claim and in fact initially participated in negotiations regarding its resolution, but then abandoned the negotiations. Under those circumstances, denying T&B's claim because it did not provide notice in writing, or did so outside the prescribed time limit, regardless of whether Trinity had actual notice of the claim or suffered any prejudice from any technical defect in the form or timing of notice, would frustrate the parties' clear intentions as to the division of liability with respect to express warranty claims. If, on the other hand, T&B cannot establish the truth of these allegations following discovery and, if necessary, trial, T&B remains subject to an obligation of substantial compliance with the notice provisions. That obligation, together with the general obligation of good faith and fair dealing inherent in all New York contracts, *see P.T. & L. Contracting Corp. v. Trataros Const., Inc.*, 816 N.Y.S.2d 508, 508 (2006), provides ample protection to Trinity against the possibility, raised in Trinity's counterclaims, that T&B settled ETT's claim on terms unfair to Trinity.

In sum, assuming that Sections 6.2 and 6.3 apply to T&B's claim rather than Schedule 6.1A of the APA, we conclude that, because T&B alleges substantial compliance with the notice provisions of Section 6.3, the district court erred in concluding that T&B's claim cannot survive a motion to dismiss. Since the district court dismissed Trinity's counterclaims solely because it dismissed T&B's complaint and thus terminated the litigation on terms favorable to Trinity, we also vacate that dismissal and reinstate those counterclaims.

9

For the reasons stated, we **VACATE** the district court's judgment dismissing T&B's complaint and Trinity's counterclaims and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court